UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM WINTER, | ) | CASE NO. 1:16CV957 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| CITY OF WESTLAKE, OHIO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | _____ |
| | ) | |
| BETHANY CAPASSO, et al., | ) | CASE NO. 1:16CV1753 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| CITY OF WESTLAKE, OHIO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | _____ |
| | ) | |
| EDMUND LEECE, | ) | CASE NO. 1:16CV2588 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| CITY OF WESTLAKE, OHIO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

The Court's consolidated Opinion and Order first addresses the Motions (ECF DKT #26 in Case No. 1:16CV957; ECF DKT #25 in Case No. 1:16CV1753; and ECF DKT #18 in Case No. 1:16CV2588) of Defendants City of Westlake, Kevin Bielozer, Mark Arcuri,

Nathan Fox and William Eschenfelder, for Summary Judgment on Qualified Immunity. For the following reasons, the Motions are granted.

**PART ONE**

**I. FACTUAL BACKGROUND**

On October 23, 2014, at approximately 8:51 p.m., City of Avon Police Officer Patrick Neuhoff radioed that a white pick-up truck had been stolen from a golf course in Avon Lake. The truck, driven by Brandon Pawlak, refused to stop. Defendant Officers Andy Kehl and Neuhoff pursued the vehicle. The vehicle traveled south on Jaycox Road and ran a red light. The truck continued south until it reached Detroit Road, where it pulled into a parking lot. Neuhoff attempted to follow the truck into the parking lot. The truck then drove over a flower bed and back onto Detroit Road. Kehl then became the lead officer in the pursuit. At 8:52, Neuhoff requested that the Avon dispatcher radio ahead to the Westlake Police Department to inform them of the fleeing vehicle. The dispatcher announced to Westlake Police the direction and speed of the truck.

At the time the dispatch was issued, Defendants, Westlake Police Officers Mark Arcuri and Nathan Fox, were writing reports at the Westlake Police Department. Initially, Arcuri and Fox anticipated that the suspect would enter I-90 at Crocker Road based upon incorrect information on the whereabouts of the vehicle. However, by the time they left in their cruisers, they learned that the pursuit was entering Westlake on Detroit Road. Arcuri and Fox were not directed by supervising or coordinating officers in relation to the pursuit, nor did they coordinate with other officers or with each other. They had no information that the driver was armed and dangerous or that the driver had committed any violent acts before

or during the pursuit.

Arcuri and Fox stopped on a stretch of Detroit Road where the road is three lanes across with the middle lane being a shared turn lane. On the night in question, the eastbound lane was under construction and the middle lane was being used for eastbound traffic. That lane was cordoned off with large orange traffic barrels. Detroit Road curves slightly to the north just before this location. The speed limit in this area is 35 miles per hour. The area is mostly commercial with parking lots and a sidewalk on either side. On one side is an apartment complex separated from the street by a few yards. On the other side is the Dover Gardens Tavern directly adjacent to the sidewalk.

Upon reaching the area, approximately two minutes and forty-five seconds after the initial call from dispatch, Arcuri parked in the middle lane with only his headlights on but not his overhead lights. He deployed his StopStick, Ltd. tire deflation devices in the eastbound lane in the path of the speeding pick-up truck. Farther down the road to the east, Fox also parked his cruiser, with its overhead flashing lights operating and partially blocking the eastbound lane.

The pick-up truck came around the slight bend in the road at approximately 74 to 77 miles per hour. The driver swerved to avoid Arcuri's cruiser, struck the stop sticks (though the truck's tires did not deflate) and the south curb of Detroit Road, and began to fishtail at high speed. Having lost control, the vehicle crashed into the front of the Dover Gardens Tavern structure, injuring Plaintiffs William Winter, Bethany Capasso, Jon Masterson, Daniel Bush, Kelly Deutschendorf, John Comer and Edmund Leece, who were patrons and employees of the bar.

In their Complaints, Plaintiffs claim they suffered severe, permanent injuries when Defendants engaged in a police pursuit and attempted to terminate that pursuit by setting up roadblocks and deploying stop sticks in a manner substantially certain to cause the fleeing vehicle to crash through an occupied restaurant at a high rate of speed. Plaintiffs' First Claim for Relief against Defendants Arcuri and Fox sets out a claim under 42 U.S.C. § 1983 for violations of Plaintiffs' substantive Fourteenth Amendment due process rights. The Second Claim for Relief sets forth a § 1983 claim for supervisory liability against Defendants Eschenfelder and Bielozer. In the Third Claim for Relief, Plaintiffs allege that the City of Westlake and Chief Bielozer, in his official capacity, are liable under § 1983 for failure to train. The Fourth Claim for Relief sets out a § 1983 claim against the City of Westlake and Chief Bielozer, in his official capacity, for ratification of unconstitutional conduct. Plaintiffs have asserted an Ohio state law claim for Recklessness in their Fifth Claim for Relief.

In their Motions for Summary Judgment, the Westlake Defendants assert the defense of qualified immunity and seek dismissal of Plaintiffs' § 1983 claims. Plaintiffs filed their Memorandum in Opposition but presented no arguments with respect to the Motions on behalf of Defendants Eschenfelder, Bielozer or the City.

## II. LAW AND ANALYSIS

**Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

*Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323

F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

## **42 U.S.C. § 1983 and Qualified Immunity**

For any action brought under 42 U.S.C. § 1983 the two essential inquiries are: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *See* 42 U.S.C. § 1983; *Parratt v. Taylor,* 451 U.S. 527, 535 (1981) overruled on other grounds by *Daniels v. Williams,* 474 U.S. 327, 330–31 (1986). These inquiries may be addressed in any order and a court may address whether a constitutional violation occurred before it looks at whether a right is clearly established. *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2020 (2014) citing *Pearson v. Callahan*, 555 U.S. 223, 233 (2009).

Officials who perform discretionary functions, such as police officers acting in the line of duty, are generally entitled to qualified immunity from individual liability for civil damages unless they violate clearly established rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982). The Sixth Circuit, in determining whether an official is entitled to qualified immunity, applies a three-part test: 1) whether the plaintiff's constitutional right was violated; 2) whether that right was clearly established at the time such that a reasonable official would have understood that he was violating that right; and 3) whether the official's action was objectively unreasonable in light of the clearly established rights. *Sample v. Bailey*, 409 F.3d 689, 696-97 (6th Cir. 2005). A court does not have to consider these prongs sequentially. *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009). Should any one portion of the test go unfulfilled, then qualified immunity is appropriate as a defense. "When properly

applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011) quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Once the defense of qualified immunity has been raised, the plaintiff has the burden of demonstrating the defendant is not entitled to qualified immunity. *Rodriguez v. Passinault*, 637 F.3d 675, 689 (6th Cir. 2011).

"The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ciminillo v. Streicher*, 434 F.3d 461, 468 (6th Cir. 2006). The legal right cannot be framed in general terms to encompass an expansive area of law. *Bills v. Aseltine*, 52 F.3d 596. 602 (6th Cir. 1995). The exact circumstances of the particular case need not have been previously held illegal for the right to be "clearly established," but the right must be clear in a particularized way to put the official on notice that his conduct is illegal. *See Scicluna v. Wells*, 345 F.3d 441, 446 (6th Cir. 2003); *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002).

In the within matter, the parties do not dispute that the Westlake Defendants were acting under color of state law at the time of this incident. Plaintiffs allege that their Fourteenth Amendment substantive due process rights were violated when Arcuri and Fox deployed their stop sticks, forcing Pawlak off the road and into the tavern.

**Fourteenth Amendment Due Process**

The Court's next inquiry is whether Arcuri and Fox breached Plaintiffs' Fourteenth Amendment due process rights. A pillar of the Fourteenth Amendment's due process guarantee is protection against arbitrary action by the government against individuals. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).

In *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the Supreme Court ruled that in order for police action in a high speed chase to qualify as a Fourteenth Amendment transgression it must reach "the cognizable level of executive abuse of power as that which shocks the conscience." In *Lewis*, the Supreme Court found that actions that shock the conscience lie within a spectrum. *Id* at 849, citing *Daniels*, 474 U.S. at 327. At one end lies "liability for negligently inflicted harm [which] is categorically beneath the threshold of constitutional due process." *Id*. At the other end of the spectrum is "conduct intended to injure in some way unjustifiable by any government interest [which] is the sort of official action most likely to rise to the conscience-shocking." *Id*. However, as the Supreme Court in *Lewis* opined:

> Whether the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but "less than intentional conduct, such as recklessness or 'gross negligence...'" is a matter for closer calls.

*Id*. at 849, quoting *Daniels*, 474 U.S. at 334.

Acknowledging that a mechanical application of due process rules is inappropriate, the *Lewis* court held "that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Id*. at 854.

The Sixth Circuit has accordingly applied this intent-to-harm framework to high-speed chases, ruling rather conclusively that absent intent to harm, pursuing officers in a high-speed chase do not violate the Fourteenth Amendment rights of a fleeing suspect. *See Meals v. City of Memphis, Tenn.*, 493 F.3d 720, 729 (6th Cir. 2007). However, the instant case presents the distinct question of whether the same Fourteenth Amendment analysis should apply to

officers responding to, but not directly involved in police chases.  More specifically, it poses a question of whether police road blocks or stop sticks deployment may violate the Fourteenth Amendment rights of innocent third parties.

While the Sixth Circuit applies an intent to harm standard to high speed chases, it takes a different stance for circumstances where state actors have time for deliberation.  "The guiding principle seems to be that a deliberate-indifference standard is appropriate in 'settings [that] provide the opportunity for reflection and unhurried judgments,' but that a higher bar may be necessary when opportunities for reasoned deliberation are not present."  *Bukowski v. City of Akron*, 326 F.3d 702, 710 (6th Cir. 2003) quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 511 (6th Cir. 2002).

**Intent to harm**

It is of the utmost importance that officers "balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders."  *Lewis*, 523 U.S. at 853.

There is no question that Pawlak posed a grave danger to the public at large.  Pawlak was traveling at nearly 75 miles per hour in a 35 miles per hour zone, while driving erratically on a two-lane road with construction barriers.  For their part, Arcuri and Fox had under three minutes to respond from the time they received the dispatch call to the time that they reached the crash site.

While Defendants' placement of the stop sticks is open to debate, it is not reasonable to assume that they could have known that the use of the stop sticks would have resulted in a

collision impacting innocent third persons. There is no evidence that Defendants possessed the requisite intent to maliciously or improperly deprive Plaintiffs in the Dover Gardens Tavern of their constitutional rights.

**Deliberate indifference/gross negligence**

Plaintiffs argue that Defendants set up a roadblock in the path of the fleeing suspect. Plaintiffs assert that such a scenario is distinguishable from a high speed pursuit and that the Court should adopt either the deliberate indifference standard or the gross negligence standard rather than the intent to harm standard for Fourteenth Amendment due process violations.

"To rise to the level of a constitutional violation, a deliberately indifferent act must be one which is conscience-shocking – the Supreme Court has acknowledged that not every deliberately indifferent action will rise to the "constitutionally shocking level." *Bublitz v. Cottey*, 327 F.3d 485, 490 (7th Cir. 2003) citing *Lewis*, 523 U.S. at 852. "The Supreme Court has also noted that the "deliberate indifference" articulation should only be used when actual deliberation by a defendant was possible." *Bublitz*, *id*.; *Lewis*, 523 U.S. at 851.

Even in circumstances applying the deliberate indifference standard, determining whether an officer acted with complete disregard for the potential consequences of his actions requires weighing a number of potential risks, including the risk posed by allowing the high-speed chase to continue on public streets. *Bublitz*, 327 F.3d at 491. As the Court in *Lewis* reasoned:

> [The officer] was faced with a course of lawless behavior for which the police were not to blame. They had done nothing to cause [the plaintiff's] high-speed driving in the first place, nothing to excuse his flouting of the commonly understood law enforcement authority to control traffic, and nothing (beyond a refusal to call off the chase) to encourage him to race through traffic at breakneck speed forcing other drivers out of their travel lanes. ... While

> prudence would have repressed the reaction, the officer's instinct was to do his job as a law enforcement officer, not to induce [the plaintiff's] lawlessness, or to terrorize, cause harm, or kill. Prudence, that is, was subject to countervailing enforcement considerations, and while [the officer] exaggerated their demands, there is no reason to believe that they were tainted by an improper or malicious motive on his part. 523 U.S. at 855.

Arcuri and Fox had, at most, three minutes to make their decision on how to intervene. The Court is not basing its analysis on the length of the time period alone, but is also balancing the threat presented by the driver, the rapidly changing conditions and attendant risks against the wisdom of the officers' decision. Defendants did not know with absolute certainty the eventual route of the driver (as evidenced by their initial reaction to block access to the I-90 freeway on-ramp). Nor did they foresee that a driver would continue speeding at 75 miles per hour in a 35 mile per hour zone in a populated area.

Although Arcuri had previous experience using stop sticks, where the fleeing vehicle lost control into a ravine, this prior conduct is not enough by itself to show deliberate indifference. While Arcuri's action here did involve some risk, he was not deliberately *indifferent* to the risk. Defendant officers deployed the tire deflation device with the hope that Pawlak's truck would be stopped. Though neither Arcuri nor Fox personally witnessed Pawlak's erratic operation of the truck, with the information they were given they could reasonably infer that Pawlak presented a danger to the public as long as he was permitted to continue on his perilous path. Neither officer had the luxury of "reflection" or "unhurried judgment." *See generally, Bukowski*; *Ewolski*.

Plaintiffs also contend that the Fourteenth Amendment claims against Arcuri and Fox can be governed by the gross negligence standard; that is, conduct more than negligent but less than intentional.

Plaintiffs direct the Court's attention to *Reed v. County of Allegan*, 688 F.Supp. 1239 (W.D. Mich. 1988) in which police officers maintained a high-speed chase and then set up an unmarked, concealed roadblock in the plaintiff-motorist's path. The *Reed* court denied a motion to dismiss, finding that the complaint sufficiently alleged that the defendants deprived plaintiff of his Fourteenth Amendment liberty rights through grossly negligent or reckless conduct. Further, the *Reed* court cited *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277 (6th Cir. 1987) for the proposition that "an allegation of gross negligence on the part of government officials was sufficient to state a claim for deprivation of due process, since such an allegation charged the officials with 'arbitrary use of government power.'" *Reed*, 688 F.Supp. at 1244.

However, the Court is not convinced. Upon review of Sixth Circuit case law following *Nishiyama* and *Reed*, the Court finds that the *Nishiyama* standard of culpability is no longer correct. In *Lewellen v. Metropolitan Gov't of Nashville & Davidson County*, 34 F.3d 345 (1994), the Sixth Circuit held that "[g]ross negligence is not actionable under § 1983, because it is not 'arbitrary in the constitutional sense.'" *Id.* at 351, citing *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 1071 (1992). The court in *Lewellen* also questioned whether even deliberate indifference by state actors could give rise to a substantive due process claim by a plaintiff who was not in the custody of the state. *Lewellen*, 34 F.3d at 350 n. 4. "What seems to be required is an intentional infliction of injury, ..., or some other governmental action that is 'arbitrary in the constitutional sense.'" *Id.* at 351.

Plaintiffs have not met their burden of demonstrating that the Westlake Defendants are not entitled to the qualified immunity defense. Plaintiffs have failed to show that Arcuri and

Fox acted with an intent to harm or with deliberate indifference. Even if Plaintiffs could demonstrate that Defendants' actions were grossly negligent or reckless, their claims still would not be actionable under § 1983. Viewed in a light most favorable to Plaintiffs, the facts do not show that these Defendants violated Plaintiffs' constitutional rights. Thus, the Court echoes the sentiments of the Sixth Circuit in *Lewellen*: "When all is said and done, this case, ..., amounts to nothing more than a non-intentional tort case the facts of which give the plaintiff a strong claim on our sympathies." *Id.*

**Clearly established right**

As the Court outlined earlier, if a plaintiff can show that he has suffered a constitutional violation, then the analysis turns to whether the constitutional right was clearly established at the time such that a reasonable official would have understood that he was violating that right. *Sample*, 409 F.3d at 696-97.

Even assuming Plaintiffs had demonstrated that Arcuri and Fox violated their Fourteenth Amendment substantive due process rights, the Court finds that the rights were not clearly established. To determine if a right is clearly established, the Court looks first to Supreme Court decisions, then decisions from the Sixth Circuit Court of Appeals, then to other courts within this circuit, and finally to decisions from other circuits. *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994). Decisions from other circuits must point unmistakably to the unconstitutionality of the act and be so clearly foreshadowed by direct authority as to leave no doubt in a reasonable person's mind that the act is unconstitutional. *Gean v. Hattaway*, 330 F.3d 758, 767-78 (6th Cir. 2003).

Following a review of the case law cited by the parties and upon conducting its own

search, the Court determines that Plaintiffs' asserted constitutional rights are not clearly established so that a reasonable police officer would know he was violating the constitutional rights of third parties.

In *Lewis*, the Supreme Court held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Lewis*, 523 U.S. at 854.

*Chesney v. Hill*, 813 F.2d 754 (6th Cir. 1987) involved a police roadblock and the Sixth Circuit found that the plaintiff, at best, alleged negligence on the part of the defendants which was not cognizable as a Fourteenth Amendment violation.

In *Buckner, supra*, a police cruiser pulled across two highway lanes and the speeding suspect on a motorcycle was unable to stop. The Sixth Circuit found a Fourth Amendment violation for terminating the suspect's freedom of movement. Plaintiffs here claim only Fourteenth Amendment violations and since they were inside the Dover Gardens Tavern, their freedom of movement was not impeded by Defendants' parked cruisers or the stop sticks.

In *Reed*, the Michigan District Court held that gross negligence or reckless conduct supported a Fourteenth Amendment claim. As discussed previously, since *Lewellen*, the *Reed* decision is no longer good law and could not have informed a reasonable officer in 2014 of a clearly established right.

The Ninth Circuit case of *Brower v. Inyo County*, 817 F.2d 540 (9th Cir. 1987) involved the implementing a roadblock and found:

> The use of roadblocks ... per se is not a violation [of the due process clause], but the pattern and practice of using a roadblock designed as a deathtrap, if established by proof, could be a violation of due process ... . *Id.* at 545.

Deploying the stop sticks by Arcuri and the positioning of Defendants' police cruisers is distinguishable from the *Brower* "deathtrap." The *Brower* decision does not point unmistakably to the unconstitutionality of the conduct before this Court for § 1983 analysis.

In *Bublitz*, *supra*, the police deployed a tire-deflation device. The fleeing vehicle ran over the spikes, veered to the right and struck an innocent third-party's vehicle, killing two passengers. The Seventh Circuit concluded that the police conduct did not rise to the level of a constitutional violation under either the Fourth or Fourteenth Amendments.

None of the cases cited by Plaintiffs nor found in the Court's own research show that Arcuri's and Fox's actions were unlawful beyond debate. Plaintiffs have failed to identify the violation of any clearly established constitutional right that a reasonable officer would have understood at the time.

**Defendants Bielozer and Eschenfelder**

Defendants have moved for summary judgment in favor of Chief Kevin Bielozer and Lieutenant William Eschenfelder on Plaintiffs' claim in Count Two of their Complaints for supervisory liability under § 1983. In their Opposition, Plaintiffs have not countered any of the arguments nor even addressed their claims in Count Two. The Court finds that Plaintiffs have abandoned Count Two and Defendants Bielozer and Eschenfelder are entitled to judgment on the § 1983 supervisory liability claim.

**Claims against the municipality**

When a § 1983 claim is made against a municipality, the Court must analyze whether the plaintiff's harm was caused by a constitutional violation and if so, whether the city is responsible for that violation. *Harker Heights*, 503 U.S. at 120. The Court has determined

that Plaintiffs have failed to establish the violation of any clearly established constitutional right. "[W]here no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Bukowski*, 326 F.3d at 712-13. The Westlake Defendants, therefore, are entitled to summary judgment in their favor on Counts Three and Four of their Complaints.

**PART TWO**

**Motion of City of Avon, Richard A. Bosley, Andy Kehl, Pat Neuhoff and Robert Olds for Summary Judgment**

This matter is before the Court on the unopposed Motions of Defendants City of Avon, Richard A. Bosley, Andy Kehl, Pat Neuhoff and Robert Olds ("the Avon Defendants") for Summary Judgment on Qualified Immunity (ECF # 25 in 16-957), (ECF # 24 in 16-1753) and (ECF # 17 in 16-2588). For the following reasons, the Court grants summary judgment for Defendants in all the above cases.

### I. FACTUAL BACKGROUND

In the above three Complaints, as relates to the Avon Defendants, Plaintiffs allege Defendant Robert Olds was the supervisor of Officers Kehl and Neuhoff on October 23, 2014, when Brandon Pawlak stole a truck parked at a golf course in Avon Lake, Ohio. Having obtained information on the location of the stolen truck, Neuhoff began a pursuit of Pawlak and was joined in the pursuit by Kehl. According to the Complaints, these officers increased the speed of the pursuit to limits that were excessive, outrageous and dangerous. Kehl and Neuhoff were in contact with Olds, who authorized the pursuit. Plaintiffs allege Olds, Kehl and Neuhoff requested Westlake police officers create a roadblock and deploy stop sticks and

were aware that Westlake officers did in fact create a roadblock and deployed stop sticks. When Pawlak ran over the stop sticks it caused him to lose control of the vehicle which then crashed into the Dover Gardens Tavern, injuring Plaintiffs. According to Plaintiffs, Defendants City of Avon and Avon Chief of Police Bosley ratified the conduct of the officers and endorsed their actions.

Plaintiffs allege Substantive Due Process violations against Kehl and Neuhoff for initiating and continuing a high speed chase and advising Westlake officers to create a roadblock under circumstances substantially certain to cause injury or death to members of the public. Plaintiffs allege Supervisory Liability in their individual capacities against Olds and Bosley for participating in and encouraging the conduct of Kehl and Neuhoff, for failing to train and supervise Kehl and Neuhoff, and for remaining deliberately indifferent to the rights of members of the public. They further allege claims against City of Avon and Bosley, in his official capacity, for failure to train and supervise Defendants and for customs, policies and practices ratifying the conduct of Defendant officers, resulting in violations of Plaintiffs' Fourteenth Amendment rights. Finally, Plaintiffs allege recklessness under Ohio law against all Defendants.

Defendants move for summary judgment, contending they are entitled to qualified immunity on all Plaintiffs' federal claims. According to Defendants, their pursuit of Pawlak was not conscience-shocking. As the Supreme Court has stated, officers do not cause or encourage lawless behavior by simply refusing to call off a chase. *Lewis,* 523 U.S. at 855. Pawlak's lawless conduct in stealing a car initiated the pursuit. Furthermore, absent any evidence of intent to harm "unrelated to the legitimate object of arrest," Plaintiffs cannot

"satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Id* at 836.

Plaintiffs have offered no evidence that the Avon Defendants violated their constitutional rights. When Plaintiffs failed to file any opposition to the summary judgment motions of the Avon Defendants, the Court issued a Show Cause Order why the claims against these Defendants should not be dismissed absent any opposition. Plaintiffs failed to respond to the Show Cause Order.

## II. LAW AND ANALYSIS

Local Rule 7.1(g) of the United States District Court for the Northern District of Ohio authorizes the Court to "rule on unopposed motions without hearing at any time after the time for filing an opposition has expired." Pursuant to Local Rule 7.1(d), "each party opposing a motion must serve and file a memorandum in opposition within thirty (30) days after service of any dispositive motion." The district court's power to grant dispositive motions because they are unopposed is firmly settled. *Demsey v. R.J. Reynolds Tobacco Co.*, 2005 WL 1917934, *2 (N.D.Ohio 2005); *Peacock v. Bayview Loan Serv.*, 2005 U.S. Dist. LEXIS 10276, *9-10 (N.D.Ohio 2005) (both citing to *Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir.2000)). A party's continuing "failure to respond" may be deemed a "confession" to the motion's merit. *Cacevic, id.* Any further review by this Court would be an inefficient use of the Court's limited resources. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.1984), aff'd, 474 U.S. 140 (1985); *Howard v. Secretary of Health and Human Services*, 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Defendants have moved for judgment based on qualified immunity, contending they

did not violate Plaintiffs' clearly established rights. On a motion for qualified immunity the plaintiff has the burden of demonstrating the defendant is not entitled to qualified immunity. *Rodriguez,* 637 F.3d at 689. Having moved for qualified immunity, Defendants have raised the defense and Plaintiffs' failure to respond militates in favor of judgment for Defendants since Plaintiffs have not met their burden. Therefore, in the absence of any evidence of a constitutional violation and in the absence of any evidence or argument against Defendants' qualified immunity defense, the Court grants summary judgment for Defendants and against Plaintiffs on all Plaintiffs' federal claims.

For the same reasons as stated by the Court in the prior section captioned "claims against the municipality", the Court finds the City of Avon cannot be held liable under §1983 where there is no underlying constitutional violation and finds it is entitled to judgment.

### III. CONCLUSION

For these reasons, the Motions (ECF DKT #26 in Case No. 1:16CV957; ECF DKT #25 in Case No. 1:16CV1753; ECF DKT #18 in Case No. 1:16CV2588) of Defendants, City of Westlake, Kevin Bielozer, Mark Arcuri, Nathan Fox and William Eschenfelder, for Summary Judgment are granted. Also, the Court grants summary judgment for the Avon Defendants in the unopposed Motions at (ECF # 25 in 16-957), (ECF # 24 in 16-1753) and (ECF # 17 in 16-2588).

Plaintiffs have also asserted claims for Recklessness under Ohio law. "Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction." *Brooks v. Rothe,* 577 F.3d 701, 709 (6th Cir. 2009) (quoting *Wojnicz v. Davis,* 80 Fed.Appx. 382, 384-85 (6th

Cir. 2003)).  Because Plaintiffs have failed to establish a federal claim for which relief can be granted, their remaining state law claims against Defendants are dismissed without prejudice.

**IT IS SO ORDERED.**

<u>**s/ Christopher A. Boyko**</u>
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated:  February 13, 2018**